Arthur Thomas CALLAHAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–99–00944–CR, 01–99–00945–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 22, 2000.

Rehearing Overruled July 27, 2000.

Dick DeGuerin, Houston, for Appellant.

John B. Holmes, Calvin Hartmann, Houston, for State.

Panel consists of Justices O'CONNOR, TAFT, and SMITH.*

## MAJORITY OPINION

TIM TAFT, Justice.

Arthur Callahan, appellant, pled guilty to two felony murders, without an agreed recommendation. In three points of error, appellant asserts his guilty plea was rendered involuntary based on ineffective assistance of trial counsel. We affirm.

### Procedural Background

The indictments charged that appellant's car struck the two decedents' car while appellant was fleeing the scene after having committed arson. Appellant entered a guilty plea to both indictments. Following a hearing on the pre-sentence investigation (PSI) report, the trial court sentenced appellant to two concurrent terms of 60–years confinement. After a hearing, the trial court denied appellant's motion for new trial.

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## Ineffective Assistance of Counsel

### A. Settlement Negotiations

In point of error one, appellant contends trial counsel was ineffective because he did not actively pursue settlement discussions with the State. Appellant contends his trial counsel should have actively pursued plea negotiations and told him about any informal discussions that might have been had with the State.

■ An accused is entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Battle*, 817 S.W.2d 81, 84 (Tex.Crim.App.1991). Reasonably effective assistance includes a duty by defense counsel to inform his client of any plea offer by the State. *Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex.Crim.App. 1987).

Trial counsel testified at the new trial hearing. He said there were no plea negotiations with the prosecutor in appellant's case. Based on his evaluation of the case, he had little doubt about the outcome if the case went to trial; he felt a trial would result in a conviction and a substantial term of years as punishment. Trial counsel admitted plea negotiations were advisable if a client were willing to accept a reasonable term of years under the circumstances. He felt appellant's case was worth between 20 and 30 years.

Trial counsel could not remember whether any prosecutor set a term of years as an evaluation or "talking point." He admitted he did not convey to appellant any offer, recommendation, evaluation, or term of years. He did not remember that there was anything to convey to appellant, and the prosecutors did not make a specific offer to pass along.

The prosecutor testified at the hearing that, based on her evaluation of the case, if an offer had been made, it would have been at least 50 years; she felt that a conviction and lengthy sentence from either a judge or jury was highly likely; she and trial counsel entered into discussions about the value of the case, but not about specific numbers; she "unequivocally . . . never offered . . . never discussed 40 years"; she thought the case was worth at least 50 years; she would have tried to get that approved by her division chief if trial counsel had asked her to do so, but trial counsel did not give her an answer; and she never made an offer to trial counsel to be conveyed to appellant. The prosecutor's file did not contain a written offer.

When asked if she thought it was unusual that counsel did not actively seek to bargain, the prosecutor responded in the negative. The prosecutor explained that she was "very vehement" about appellant's case and there was not going to be an offer lower than 50 years. It was her opinion that trial counsel thought there was a possibility of getting less than 50 years from a judge after a PSI hearing.

■ Assuming, without deciding, that trial counsel was ineffective for not having pursued plea negotiations or conveying plea discussions to appellant, we consider whether appellant established that he was harmed. Applying the usual ineffective assistance of counsel standard for determining harm to situations in which a defendant pled guilty, an appellant must show that, but for counsel's deficient performance, he would not have pled guilty. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex.Crim.App.1997). Appellant must show, therefore, by a preponderance of the evidence, that he would have refused to enter a plea of guilty, without a recommendation, if his trial counsel had communicated to appellant either the substance of any plea negotiations between his counsel and the prosecutor or his counsel's evaluation of the case.

■ Appellant claims he would have accepted a 40–year offer. In his affidavit, supporting his motion for new trial, appellant claimed that his trial counsel said the State had made a 40–year offer. The prosecutor denied that a 40–year offer, or any offer, was ever made. The trial court, at the hearing on the motion for new trial, was entitled to believe the prosecutor rather than appellant. The prosecutor was

adamant that no offer would be for less than 50 years, even though trial counsel thought the case was worth 20 to 30 years. Even an offer of 50 years would not have been made until approved by the prosecutor's supervisor, and there is no showing that such approval would have been forthcoming. Appellant has not met his burden of proving by a preponderance of the evidence that he was harmed.

We overrule point of error one.

## B. Investigation of the facts

In point of error two, appellant contends trial counsel was ineffective because he did not personally investigate the facts of the case. Appellant contends trial counsel never intended to try the case, and, therefore, did not sufficiently investigate the case before appellant entered his guilty plea.

■■■ In his motion for new trial and on appeal, appellant contends trial counsel did not personally conduct an investigation, although he concedes trial counsel met with him for one and one-half hours, and hired a private investigation agency to carry out 15 hours of investigation. A defense attorney is not required to investigate the facts of a case *personally*. Counsel may delegate the investigation to a private investigator. Appellant has not met his burden of showing trial counsel's actions were deficient.

We overrule point of error two.

## C. Motion to quash

In point of error three, appellant contends trial counsel was ineffective because he did not file a motion to quash the indictments. Appellant contends the indictments could have been quashed because they did not identify the name of the complainant of the arson, which formed the aggravating factor of the felony murder charges.[1] Both indictments read as follows:

[Appellant], on or about June 13, 1998, did then and there unlawfully, intention-

ally and knowingly COMMIT the felony offense of MURDER by STARTING A FIRE WITH THE INTENT TO DESTROY AND DAMAGE A BUILDING AND THE DEFENDANT WAS RECKLESS ABOUT WHETHER THE BURNING WOULD ENDANGER THE LIFE OF A PERSON AND THE SAFETY OF PROPERTY OF ANOTHER, and while in the course of and furtherance of the IMMEDIATE FLIGHT FROM THE COMMISSION OF said offense did ATTEMPT TO COMMIT an act clearly dangerous to human life, to-wit: FAIL TO TURN ON HIS VEHICLE'S HEADLIGHTS AND CAUSING HIS VEHICLE TO STRIKE THE VEHICLE IN WHICH THE COMPLAINANT RODE and did thereby cause the death of [the decedent].

■■ On appeal, appellant contends he pled guilty to indictments that did not give him precise notice of the arson or protect him on double jeopardy grounds from a future arson prosecution.

### 1. Sufficient notice

Assuming that trial counsel should have filed a motion to quash the indictments, appellant has not shown he was harmed by counsel's error. Appellant does not assert he did not know which building was the subject of the arson. He does not complain that the physical location of the building was not mentioned in the indictments, or that he did not know its location. Appellant does not explain how knowing the building owner's identity would have affected his guilty plea, and he does not contend he might not have pled guilty if he had known the owner's identity. Appellant has not met his burden of proving by a preponderance of the evidence that he was prejudiced by counsel's performance.

### 2. Double jeopardy

Other than appellant's conclusory statement that he was denied double jeopardy protection because the indictments did not

---

1. The arson complainant was not one of the decedents.

identify the building owner, appellant provides no support for his argument. He does not explain how knowing the building owner's identity would have provided him with double jeopardy protection.[2] Appellant does not explain how the State could successfully prosecute him in a separate arson trial. Appellant has not met his burden of proving by a preponderance of the evidence that he was prejudiced by any deficient performance of counsel.

We overrule point of error three.

### Conclusion

We affirm the judgment of the trial court.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting.

I dissent. I believe that defense counsel's performance was deficient and the appellant was harmed. I would reverse and remand.

The appellant knew he had to plead guilty because the facts of this case were too inflammatory to submit to a jury. Defense counsel was hired to do only one thing: secure the lowest sentence possible. Defense counsel did not take any steps to do the only thing he was hired to do. I do not see how his performance was anything but ineffective.

Defense counsel had only one short conversation with the assistant district attorney (ADA), in which she said an offer, which would have to be approved by her superior, would not be less than 50 years. Defense counsel did not ask the ADA to make a formal offer. Instead of asking her to secure permission to make an offer, or taking procedural steps in the case as a way of improving the appellant's bargaining position,[1] defense counsel did nothing. Compounding his breach of duty, defense counsel did not tell the appellant about the ADA's position on sentencing.

The appellant understood the difficulty of his situation—a jury would not have been sympathetic toward a defendant charged with the murder of a young mother and her child, who fled the scene and was drunk. Understanding he faced a long jail sentence, he testified by affidavit at the new trial hearing that he would have accepted an offer of 40 years.[2] Because defense counsel did not tell him the ADA's evaluation of the case, he deprived the appellant of the opportunity to consider a 50 year offer. Therefore, regardless of whether any plea negotiations would have resulted in a sentence of less than 50 years, the appellant was harmed because he was sentenced to 60 years.

The information withheld from the appellant was critical to his decision to plead

2. Appellant relies on *King v. State*, 594 S.W.2d 425, 426 (Tex.Crim.App.1980), in which the court held, "It is clear that when criminal conduct, constituting an aggravated feature of an offense may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is a fact to which the accused is entitled should he request it by timely filed written motion to quash." In *King*, the allegation of such a fact was required to distinguish the conduct alleged from other conduct by the defendant, and thereby insure a bar to a subsequent prosecution for the same offense. *Id.*

1. In point of error three, the appellant contends defense counsel was ineffective because he did not file a motion to quash the defective indictment. The indictment was defective because it did not name the complainant in the underlying arson. If defense counsel had

filed a motion to quash, the ADA would have had to re-submit the case to another grand jury panel, delaying the disposition of the case. The appellant argues the additional work involved in re-indicting him and the delay in disposition might have encouraged the ADA to reduce the offer to less than 50 years.

2. The appellant's affidavit stated, in part, as follows:

Given the circumstances surrounding the two counts of murder with which I was charged, I would have accepted the State's settlement offer of forty years had Mr. Graizer [sic] timely conveyed the offer to me. I would have accepted this offer, quite simply, because I knew that my chances of obtaining deferred adjudication were very slim and that I could have easily been sentenced to more than forty years.

guilty. Negotiations regarding sentencing involves both the State and the defendant. Before a defendant learns about an ADA's position regarding sentencing in the case, the defendant may not have a realistic understanding of his options. Because the appellant was not told about the valuations placed on his case by the ADA, the appellant pled guilty without a sentencing recommendation. Therefore, the appellant's plea was not made knowingly and voluntarily.

I would reverse the trial court's judgment and remand for further proceedings.