NO. 07-04-0034-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 2, 2004
_____

FRANK GONZALES HERNANDEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 4024; HON. STEVEN R. EMMERT, PRESIDING
_____

*Memorandum Opinion*
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Appellant Frank Gonzales Hernandez contests in four issues his conviction of possession of a controlled substance (cocaine) in an amount of 400 grams or more. In those issues, he argues 1) the trial court erred in overruling his motion to suppress, 2) he received ineffective assistance of counsel because his counsel did not inform him of the correct range of punishment and failed to object to various evidence, and 3) the trial court

abused its discretion in admitting evidence of a prior stop. We affirm the judgment of the trial court.

### Background

On November 22, 2002, Highway Patrol Trooper Jason Henderson stopped appellant on Interstate 40 for speeding and following too closely to another vehicle. Henderson observed that appellant was extremely nervous though he told him that he would receive only a written warning. He ran a license check on appellant and discovered that he had several prior arrests, at least one of which was for possession of marijuana. He then returned to appellant's vehicle, noted his continued nervousness, and asked that he step out of the vehicle. Appellant signed the warning, and Henderson asked him if he had ever been arrested before. Appellant stated that he had not but later modified his comment to say that he had not been arrested in the last 20 years. This the officer knew to be false. The trooper then asked for permission to search the vehicle; appellant refused to grant it. At that point, the officer told him he would be detained until a canine unit arrived to sniff for contraband.

At the time the canine search was conducted, the dog alerted to the presence of narcotics. The officers then searched the vehicle and found some marijuana in a bag in the front seat and another small bag that tested positive for methamphetamine. Some gum that the trooper saw appellant take from his mouth when initially stopped and stick to the vehicle's console also had a white substance coating it. Testing of the gum in the field revealed the presence of methamphetamine. Appellant was then arrested. The officers continued the search and discovered indicators of a false floor in the rear cargo area. The area was later discovered to contain 66 pounds of cocaine.

2

### *Issue One - Motion to Suppress*

Appellant argues in his first issue that Henderson did not have specific articulable facts to warrant his continued detention after giving him a warning ticket. We overrule the issue.

We review the trial court's ruling on a motion to suppress under the standard announced in *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we give almost total deference to the trial court's findings of historical fact and review *de novo* its application of the law to the facts. *Id.* at 89.

Appellant does not challenge the legality of the initial stop but contends that his continued detention for the canine officer once he had received the warning ticket was unjustified. A temporary detention to allow an olfactory inspection by a police dog trained to detect the odor of illegal narcotics does not violate the Fourth Amendment when based on reasonable suspicion that narcotics are present. *Crockett v. State,* 803 S.W.2d 308, 311 n.7 (Tex. Crim. App. 1991). After an initial traffic stop, an officer is entitled to rely on all of the information obtained during the course of his contact with the driver in developing the articulable facts that justify a continued detention. *Razo v. State,* 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); *Powell v. State,* 5 S.W.3d 369, 377 (Tex. App.–Texarkana 1999, pet. ref'd), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). Furthermore, he is entitled to request a driver's license, insurance papers, information on the ownership of the vehicle, the driver's destination, and the purpose of the trip. *Powell v. State,* 5 S.W.3d at 377; *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex. App.–Fort Worth 1998, pet. ref'd); *Ortiz v. State,* 930 S.W.2d 849, 856 (Tex. App.–Tyler 1996, no pet.). It is also reasonable to check for outstanding warrants. *Powell v. State,* 5 S.W.3d at 377;

3

*Smith v. State,* 840 S.W.2d 689, 692 (Tex. App.–Fort Worth 1992, pet. ref'd); *Petty v. State,* 696 S.W.2d 635, 639 (Tex. App.–Dallas 1985, no pet.).

Henderson testified that: 1) appellant showed a high level of nervousness, *i.e.* his voice was shaking and quivering, his hands were shaking, he would not make eye contact, and he kept crossing his arms and sticking his hands in his pockets; 2) the degree of nervousness did not decrease throughout the detention and despite being told he was only going to receive a warning ticket; 3) appellant told the trooper that he was going to visit some friends in Atlanta, Georgia, but later said he was a self-employed lighting technician and was going to do a job there; 4) the trooper did not see any items in appellant's vehicle such as amplifiers, lighting equipment, electrical cords or anything that would be connected with that occupation; 5) the trooper ran a criminal history check and was advised that appellant had several prior arrests at least one of which was for possession of marijuana; 6) appellant told the officer that he had not been arrested before and then stated he had not been arrested in the last 20 years, although Henderson knew appellant had been arrested in the last seven or eight years; 7) when asked if he had any "dead bodies in the car," appellant quipped "'that he had dropped them off earlier'" but simply shook his head when asked if he had marijuana or cocaine in the vehicle; 8) when first stopped by the officer, appellant removed from his mouth a "large piece of bubble gum" having a "white substance coating" (which proved to be methamphetamine); 9) appellant initially stated he was responsible only for the personal items in the vehicle which caused the officer to believe he was trying to distance himself from the vehicle, and 10) based on his experience and training as a drug interdiction officer, the trooper believed appellant's conduct "indicated . . . that he was either high on some type of narcotic and/or . . . involved in some

4

sort of criminal activity." The trooper also stated that he believed appellant was trying to hide something.

We believe that from the totality of the circumstances, the officer had a reasonable basis to believe that narcotics were present. *See Powell v. State,* 5 S.W.3d at 378-79 (holding that the officer had a reasonable suspicion of criminal activity based on the defendant's nervousness, the conflicting stories of the defendant and his passenger about the details of their trip, the defendant's statement that he had never been arrested when the officer found out by computer that he had, and the lack of registration of the car to either occupant). So, briefly detaining appellant for the purpose of conducting a search via a drug dog was not improper.

To the extent that appellant relies on *McQuarters v. State,* 58 S.W.3d 250 (Tex. App.–Fort Worth 2001, pet. ref'd) to contend otherwise, we find the case distinguishable. Unlike the circumstances here, those present in *McQuarters* did not include the officer catching the detainee in a lie or the discovery that the detainee had been involved in prior drug related matters; those missing indicia were of import to the *McQuarters* court. *Id.* at 257. And, they are present here. So, that case does not control our outcome, and we conclude that the trial court did not abuse its discretion in overruling the motion to suppress.

### Issues Two and Three - Ineffective Assistance of Counsel

In his second and third issues, appellant complains that his trial counsel was ineffective in failing to inform him of the correct range of punishment for his offense and in failing to object to the admission of certain evidence. We overrule the issues.

*Range of Punishment*

Prior to commencement of the punishment phase, appellant's counsel made a statement on the record that at all times throughout the case including prior to trial when the State offered a plea bargain of ten years, he had represented to appellant that the range of punishment was five years to 99 years or life. However, the accurate range was ten to 99 years or life. Because of this mistake, appellant now claims that he never "had the opportunity to evaluate the plea bargain offer with accurate advice of counsel until after the guilty verdict" and, but for the erroneous advice of counsel, it could reasonably be assumed he would have accepted the plea bargain. In other words, he contends that the misstatement was prejudicial since it denied him opportunity to adequately assess the plea offer.

An accused is entitled to effective assistance of counsel during the plea bargaining process. *Hernandez v. State,* 28 S.W.3d 660, 664 (Tex. App.–Corpus Christi 2000, pet. ref'd); *Callahan v. State,* 24 S.W.3d 483, 485 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd), *cert. denied,* 535 U.S. 1078, 122 S.Ct. 1962, 152 L.Ed.2d 1022 (2002). However, appellant is required to prove, by a preponderance of the evidence, not only that his counsel's representation fell below the objective standard of professional norms but also that it prejudiced his defense. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Furthermore, to satisfy the latter prong, it must be shown that there exists a reasonable probability that but for the misconduct, the result would have been different. *Id.* This is satisfied if the circumstances undermine our confidence in the outcome. *Id.* Moreover, claims of ineffectiveness must be firmly founded in the record. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136

L.Ed.2d 851 (1997), *overruled on other grounds by Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998).

Assuming *arguendo* that a plea offer was made and that counsel's performance was deficient, appellant failed to present any evidence either at trial or at the hearing on his motion for new trial illustrating that the outcome would have differed. Given that appellant complained about his inability to accurately assess the plea offer, the requisite evidence would have to include that establishing that he would have taken the offer. *See Dickerson v. State,* 87 S.W.3d 632, 638 (Tex, App.–San Antonio 2002, no pet.) (holding that the appellant did not carry his burden since he did not prove he would have accepted the plea offer if his attorney had relayed it to him); *Martins v. State,* 52 S.W.3d 459, 468 n.6 (Tex. App.–Corpus Christi 2001, no pet.) (holding the same). It was not enough to simply suggest in his appellate brief that it could reasonably be assumed that he would have accepted the offer. And, this is especially so when, as here, the record contains evidence of appellant telling others that he thought he had a "case [he could] beat" and he agreed with his attorney when his attorney said "he doesn't plead cases." In short, appellant did not carry his burden on appeal.

*Admission of Evidence*

Appellant next notes 16 different instances in which he alleges that his counsel should have objected to the admission of evidence based on various rules of evidence. For the majority of these instances, appellant merely quotes the objectionable testimony and states the witness was not qualified and/or states that an objection should have been made under a specific rule of evidence. Little to no substantive analysis was provided to us. This is problematic since a brief must contain clear and concise argument for the contentions

made with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(h). Mere conclusions without argument or analysis do not satisfy this requirement and result in the waiver of the complaints. *Garcia v. State,* 887 S.W.2d 862, 871 (Tex. Crim. App. 1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995).

Yet, even assuming that the instances of performance mentioned by appellant fell below reasonable norms, he said nothing about how they prejudiced him. Again, it was his obligation to illustrate a reasonable probability that the outcome would have differed but for the mistakes. Furthermore, the evidence of guilt was strong. Given this we cannot say appellant carried his burden. *Ladd v. State,* 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (the failure to make any effort to prove prejudice precludes relief), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *Umphres v. State*, No. 07-02-0420-CR, 2004 LEXIS 5737 at 13-14 (Tex. App.–Amarillo, June 24, 2004, no pet.) (not designated for publication) (holding that the appellant failed to carry his burden of proof because he made no effort to illustrate prejudice).

### Issue Four - Previous Stop

In his final issue, appellant complains of the trial court's admission during the punishment phase of a previous stop of him by the same officer who conducted the canine drug search. We overrule the issue.

During the punishment phase, the canine officer testified that he had stopped appellant on Interstate 40 approximately one month earlier when he was driving a different vehicle because he had made an illegal u-turn. Appellant was only given a warning ticket at that time as well. Yet, the officer also had his drug dog sniff around the vehicle. Though

8

the dog's response satisfied two of the three indicators illustrating the presence of narcotics, appellant was released; all three indicators had to be present, according to the officer, for him to have probable cause to search the vehicle.

Appellant argues that the trial court should have sustained his objection to the evidence under Rule of Evidence 403. And, other than saying that the evidence was relevant only for the purpose of illustrating that he had traveled on I-40 earlier, no substantive analysis is provided to us explaining why Rule 403 required exclusion of the evidence. Nor was anything said about prejudicial effect, if any, of the evidence or how it substantially outweighed its probative value. Consequently, the issue was inadequately briefed and, therefore, waived.

Moreover, we note that evidence may be offered regarding any matter the trial court deems relevant to sentencing at the punishment hearing. TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(a)(1) (Vernon Supp. Pamph. 2004-2005). Additionally, its ruling is reviewed under the standard of abused discretion. *Reese v. State,* 33 S.W.3d 238, 240 (Tex. Crim. App. 2000).

Here, the evidence tends to show a possible pattern in which appellant traveled I-40 transporting drugs. Having that tendency, it is the type of evidence that a jury may consider in assessing punishment. *See Fowler v. State,* 126 S.W.3d 307, 311 (Tex. App. – Beaumont 2004, no pet.) (holding that evidence of a pattern of conduct of prior assaults had legitimate purpose of causing jury to increase the defendant's punishment). This seems especially so when other evidence, such as the special compartment for carrying drugs being built into the vehicle he drove when ultimately arrested, appears of record. In short, it was one more bit of evidence indicating involvement in the drug business, a factor

well worth considering when assessing punishment. Thus, we cannot say that the trial court's ruling fell outside the zone of reasonable disagreement or constituted an instance of abused discretion.

Accordingly, the judgment of the trial court is affirmed.

Per Curiam

Do not publish.